UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        -against-<br><br>MARIO HERRERA,<br><br>                Defendant. | 16 CR 64 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant Mario Herrera's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Second 2255 Petition") and pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c) (the "3582 Motion" and, collectively with the Second 2255 Petition, the "Pending Motions"). (Dkt. nos. 542, 547.) The Government opposed the motions, (dkt. no. 554), and Defendant replied, (dkt. no. 561). For the reasons set forth below, the motions are denied.

I.  **Background**

   A.  **The Indictment**

On January 28, 2016, Defendant was charged along with sixteen co-conspirators in a two-count Indictment. (Dkt. no. 2.) Count One of the Indictment charged Defendant with participating in a conspiracy to distribute and possess with the intent to distribute (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine and (ii) mixtures and substances containing a detectable amount of marijuana, in violation of

21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(D), and 846. (Id. ¶¶ 1-3.) Count Two of the Indictment charged Defendant with participating in a conspiracy to distribute and possess with intent to distribute quantities of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. (Id. ¶¶ 4-6.) Following Defendant's arrest, Sarah Kunstler, a CJA attorney, was appointed to represent Defendant. Defendant later retained Carlos Gonzalez of Gonzalez Law Associates to represent him.

B. **Guilty Plea**

On June 2, 2017, Defendant consented to proceed before United States Magistrate Judge Barbara Moses before whom he pled guilty to the lesser-included offense of conspiring to distribute more than 500 grams of mixtures and substances containing a detectable amount of cocaine. (See Plea Tr., dated June 30, 2017 [dkt. no. 409]; dkt. no. 554, Ex. A ("Plea Agreement").) The parties further agreed in the Plea Agreement that Herrera's stipulated Sentencing Guidelines ("U.S.S.G." or "Guidelines") range was 151 to 188 months imprisonment (the "Stipulated Guidelines Range"), based on a total offense conduct level of 33 and criminal history category II. (See Plea Agreement at 2-4.) In calculating the total offense level, the Plea Agreement explained that the base offense level was derived from a drug quantity calculation involving "approximately 1 kilogram of cocaine" and "approximately 1,200 grams of oxycodone." (Id. at 2-3.) Defendant also agreed

2

to waive his right to a direct appeal and a collateral challenge if he received a sentence within or below the Stipulated Guidelines Range. (Id. at 4.) Pursuant to the Plea Agreement, the Government agreed, among other things, to dismiss Count Two of the Indictment charging Defendant with conspiring to distribute or possess with the intent to distribute quantities of oxycodone. (See id. at 1; see also Sentencing Tr., dated Oct. 10, 2017 [dkt. no. 554, Ex. B] 11:6-7.)

At the plea proceedings, Magistrate Judge Moses began by establishing that Defendant understood the nature of the proceedings, was satisfied with the representation of his Counsel, was not under the influence of any alcohol or narcotic or subjected to any threats or force, and had discussed the Plea Agreement with counsel. (See dkt. no. 554, Ex. C at 4-7). Judge Moses also thoroughly reviewed the rights that Defendant had agreed to forfeit by pleading guilty, including waiving his right to "challenge [his] sentence, whether by direct appeal, writ of habeas corpus[,] or otherwise." (Id. at 16:13-14.) Judge Moses explained the ramifications of pleading guilty on the sentencing phase and allocuted Defendant on his understanding "that the decision as to the appropriate sentence in [his] case will be entirely up to the sentencing judge, Judge Preska, not [the Magistrate Judge], not the prosecutor, not [Defendant's] lawyer." (Id. at 10:13-16.)

3

Judge Moses then explained to Defendant that there was a mandatory minimum of five years of incarceration and four years of supervised release.  (Id. at 13.)  Judge Moses explained the key terms of the Plea Agreement to Defendant, including the Stipulated Guidelines Range.  (Id. at 15.)  Judge Moses also asked whether Defendant understood that neither party could argue to the sentencing judge for a different calculation than the one in the agreement and that, by entering the Plea Agreement, Defendant was giving up his right to challenge any sentence, by direct or appeal or writ of habeas corpus, that was 188 months or less.  (Id. at 16:7-16.)  Judge Moses further explained to Defendant that "the sentencing judge will pronounce whatever sentence she believes is the appropriate sentence for you, even if that sentence is different from the one set forth or described in your plea agreement."  (Id. at 17:14-18.)  After ensuring that Defendant's plea was voluntary, Judge Moses stated that she would recommend that the district judge accept Defendant's guilty plea.  (Id. at 19-21.)  The plea was later accepted by the Court.

C. **The Pre-Sentence Investigation Report and Sentencing**

The Probation Office prepared a Pre-Sentence Investigation Report, which it filed on September 7, 2017.  (See Pre-Sentence Investigation Report ("PSR"), dated Sept. 7, 2017 [dkt. no. 420].)  The PSR calculated Defendant's base offense level at 32.  (PSR at 4).  Defendant received a four-level increase based on his

4

leadership role, and a three-level reduction for accepting responsibility and timely providing the Government with information of his involvement in the crime and pleading guilty to the offense.  (Id.)  Thus, the PSR calculated Defendant's offense level to be 33, resulting in a Guidelines range of 151 to 188 months, consistent with the Plea Agreement.  (Id.)  The PSR recommended a sentence of 151 months' imprisonment to be followed by a five-year term of supervised release.  (Id. at 38.)  Neither party objected to the PSR.  (PSR at 37; Sentencing Tr. at 2:9-11.)

On October 10, 2017, the Court held a sentencing hearing.  In advance of sentencing, both the Government and defense counsel made written submissions.  (See dkt. nos. 428, 432.)  The Government argued that the Court should sentence Defendant within the Stipulated Guidelines Range of 151 to 188 months' imprisonment.  (See dkt. no. 428 at 1.)  Mr. Gonzalez argued for a below-Guidelines sentence.  (Dkt. no. 432 at 1.)

The Government offered several facts in advance of and during the sentencing concerning Defendant's involvement and leadership role in the conspiracy, including his role in distribution, procurement, sales, and recruitment.  (Sentencing Tr. 5:23-7:12.) Mr. Gonzalez continued to argue for a below-Guidelines sentence based on Defendant's family and measures already taken by Defendant toward rehabilitation.  (Id. 3:19-4:7.)  Ultimately, the Court

imposed a sentence of 151 months' imprisonment, which was at the bottom of the Stipulated Guidelines Range. (Id. at 9:5-7.)

Defendant did not seek a direct appeal of his conviction or the term of imprisonment in his sentence. However, Defendant challenged the Court's imposition of a special condition of supervised release: that he "shall participate in an outpatient substance abuse program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol." (Dkt. no. 436 at 5). On January 25, 2019, the Court of Appeals affirmed the Court's imposition of this special condition. United States v. Herrera, 748 F. App'x 432, 433 (2d Cir. 2019) (summary order).

**D.   The First Habeas Petition**

On July 12, 2019, Defendant filed his first petition pursuant to 28 U.S.C. § 2255 (the "First 2255 Petition"). (See dkt. no. 481.) The First 2255 Petition challenged Defendant's conviction and sentence on the grounds that his plea was not entered voluntarily or knowingly because he allegedly received ineffective assistance of counsel. (Dkt. no. 482 at 7-12.) On August 12, 2021, the Court denied the First 2255 Petition. (Dkt. no. 510.) In denying the First 2255 Petition, the Court noted, among other things, that Defendant's arguments were refuted by his own sworn statements during his plea hearing. (Id. at 9-11.)

6

**E.   Instant Motions**

Now, Defendant brings the Second 2255 Petition—without first obtaining permission from the Court of Appeals—and argues that it merits relief due to a change in New York State law that decriminalized certain marijuana offenses and, in turn, would have changed his criminal history category and Guidelines range.  (See Second 2255 Petition at 5.)  Defendant restates this argument in the 3582 Motion and also argues that certain medical conditions entitle him to early release.  (See 3582 Motion at 4-5.)  For the reasons to follow, the Pending Motions are denied without a hearing.

**II.  Applicable Law**

   **A.   Second 2255 Petition**

On March 9, 2022, Defendant filed his pro se Second 2255 Petition, seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Accordingly, relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing

court, or an error of law or fact thatg constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (internal quotation marks and citation omitted).

Because this is Defendant's second petition pursuant to 28 U.S.C. § 2255, he was required first to obtain permission from the Court of Appeals before filing. See 28 U.S.C. § 2244(b)(3)(A); Corrao v. United States, 152 F.3d 188 (2d Cir. 1998) (vacating dismissal of conviction based on second or successive petition because defendant had not first obtained permission to file from the Court of Appeals).

### B.   3582 Motion

Under 18 U.S.C. § 3582(c)(1)(A), the Court "may reduce the term of imprisonment . . . after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582 (c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023).  But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by

8

a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons[]' . . . and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals determined that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[ ] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering

9

such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing Amendments to the Guidelines, 88 Fed. Reg. 28254-01 (May 3, 2023) (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b).

The Court must also conclude that the Section 3553(a) factors warrant a sentencing reduction. See United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (concluding that a district court may deny a motion for compassionate release if the Section 3553(a) factors do not warrant a reduction without reaching the question of extraordinary and compelling reasons). Consideration of the

10

relevant Section 3553(a) factors requires an assessment of whether they "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." United States v. Ebbers, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020), abrogated on other grounds by Brooker, 976 F.3d at 236; see United States v. Lisi, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (finding "extraordinary and compelling reasons" warranting the defendant's release but nevertheless denying motion for compassionate release because § 3553(a) factors "weigh[ed] heavily against [a] reduction of [the defendant's] sentence").

As the proponent of the motion, Defendant bears the burden of proving both that "extraordinary and compelling reasons" exist and that the Section 3553(a) factors warrant early release. See United States v. Gotti, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020); see generally United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## III. Discussion

### A.  Defendant Waived Collateral Attack on His Sentence

First, by virtue of his Plea Agreement, Defendant waived his ability to attack his sentence collaterally.  (Plea Agreement at 4.)  This waiver is valid and enforceable.  Of course, "waivers

11

may be set aside where defendant is challenging the constitutionality of the process by which he waived those rights, including when the defendant claims that the plea agreement was entered into without effective assistance of counsel and when the waiver was not made voluntarily and competently." Khan v. United States, No. 07 Cr. 711 (LAP), 2014 WL 2111677, at *6-7 (S.D.N.Y. 2014) (quoting United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) and United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)) (internal quotation marks omitted). But "[w]here the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing United States v. Monzon, 359 F.3d 110, 119 (2d Cir. 2004)).

Here, Defendant waived his right to file a direct appeal and to raise a collateral challenge as to any sentence within or below his Stipulated Guidelines Range of 151 to 188 months' imprisonment. (Plea Agreement at 4.) Defendant received a sentence of 151 months – the bottom of the Stipulated Guidelines Range. Accordingly, the Court need not consider any other claims regarding his sentence. See Rosa v. United States, 170 F. Supp. 2d 388, 406 (S.D.N.Y. 2001) ("[T]his Court's ruling that [petitioner] received effective assistance of counsel in connection with his plea now bars the Court's consideration of any claims regarding his

sentence. This is because [petitioner] agreed not to seek relief under 28 U.S.C. § 2255 if he were sentenced within the sentencing range specified in the Plea Agreement. [Petitioner] was indeed sentenced within that range and is now bound by the Plea Agreement.").

**B. The Second 2255 Petition Should be Dismissed for Procedural Default**

Second, Defendant did not obtain permission from the Court of Appeals to file the Second 2255 Petition, and this failure provides an independent basis for the Court to deny the Second 2255 Petition. See 28 U.S.C. § 2244(b)(3)(A); Corrao, 152 F.3d at 191 (vacating a district court's decision on a second 2255 petition brought without permission, and holding that "reaching the merits of an uncertified second or successive Section 2255 petition impermissibly circumvents the [Antiterrorism and Effective Death Penalty Act of 1996]'s gatekeeping provisions[]"); see also United States v. Larkins, 670 F. App'x 1, 1 (2d Cir. 2016), as amended (Nov. 8, 2016) (summary order) ("A district court may consider a successive § 2255 motion only if the movant first obtains from this [c]ourt an order authorizing consideration of the successive motion."). Thus, Defendant must first obtain an order from the Court of Appeals authorizing his filing of the Second 2255 Petition before the Court may consider it on the merits.

### C. The Second 2255 Petition Lacks Merit

Third, even if Defendant had obtained the requisite permission, the Second 2255 Petition lacks merit. Defendant is correct that, due to changes in New York State law and the decriminalization of many marijuana-related offenses, his prior convictions have been dismissed. (See N.Y. State Senate Bill 854A (decriminalizing the relevant statutes).) However, the Court of Appeals has instructed that "a state's reclassification that occurs after a conviction has become final does not apply retroactively." United States v. Mazza, 503 F. App'x 9, 11 (2d Cir. 2012); see also United States v. Hoskins, 905 F.3d 97, 103 (2d Cir. 2018) (holding that change in criminal history category "does not mean that the continued imposition of [the imposed sentence] was a miscarriage of justice"); United States v. Dunnigan, 605 F. Supp. 3d 487, 497 (W.D.N.Y. 2022) (citing Hoskins and denying Section 2255 petition); United States v. Harris, No. 12 Cr. 65 (WKS), 2020 WL 9218959, at *6 (D. Vt. Nov. 3, 2020) (denying petition brought under Section 2255 and holding, in part, that "[t]he vacatur of an underlying state conviction, by itself, does not automatically render the continued imposition of his current sentence unlawful."). Thus, even if Defendant had properly brought the Second 2255 Petition, and even if it had not defaulted based on the terms of his Plea Agreement, he would still find no relief

based on a change in New York State law that took place five years after he was sentenced.

In any event, even if changes in New York State law were applied retroactively, and even if Defendant qualified for resentencing, there is no indication that he would have received a different sentence. Under Defendant's scenario, his criminal history would be a category I, and his Guidelines range would have been 135-168 months in prison. As noted above, at criminal history category II, his Guidelines range was 151-188 months in prison. Thus, given the Court's recognition at sentencing of the seriousness of Defendant's offense and the harm it imposed on Defendant's community, it is likely he would have received the same sentence regardless of if he was in criminal history category I or II.

### D. The Section 3582 Motion Is Without Merit

In his Section 3582 Motion, Defendant first reiterates his argument regarding the reclassification of certain marijuana offenses in New York. That argument is rejected for the reasons noted above.

Defendant also seeks compassionate release based on his "back pain from falling off [a] bunk." (Dkt. no. 547 at 4, 27.) Defendant's back pain does not constitute an extraordinary and compelling circumstance. First, the Guidelines provide that "a serious physical or medical condition" can justify a sentence

15

reduction if that condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and the defendant "is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Defendant's 2021 medical records reveal that he is, in fact, well cared for in his prison facility and receives medication and regular care for his back pain. (See dkt. no. 554, Ex. D [filed under seal] at 8-10 (outlining detailed plan of care for back pain); id. at 18-19 (review of follow-up visit for back pain).)[1] Thus, Defendant has fallen far short of meeting his burden. Even if Defendant's back pain constituted an extraordinary and compelling circumstance, the Section 3553(a) factors counsel against release.

Despite Defendant's argument in his reply that "his offenses were for selling drugs, in very small quantities, despite the Government's attempts to make it appear that he was some sort of drug lord moving extremely large quantities of drugs in the community," (dkt. no. 562 at 9), the Court concluded, as set out in the PSR, that Defendant was in fact the leader of a drug trafficking organization that flooded his community with cocaine

---

[1] Given the sensitive nature of the materials, the Government filed a copy of Defendant's medical records under seal. See, e.g., United States v. Suarez, No. 16 Cr. 453 (RJS), 2020 WL 5513333, at *1 (S.D.N.Y. Sept. 14, 2020) (noting that presumption in favor of open records was outweighed by defendant's privacy interest and allowing for filing of medical records under seal).

16

and tens of thousands of oxycodone pills.  He organized the supply of oxycodone and coordinated its distribution in his community.  He also coordinated the supply of cocaine, obtained in Mexico and shipped to the Bronx, and its distribution within his community.  As the Court noted at sentencing, Defendant was a "leader" in his drug trafficking organization and participated in "an exceedingly serious offense."  (Sentencing Tr. 8:9-11.)  Those facts remain the same, and releasing Defendant a mere seven years after sentencing would not constitute adequate punishment given the nature and seriousness of his crimes.  It would also not deter others from similar conduct in the future.

As to Defendant's protestation that he is "reformed, rehabilitated, and remorseful," (dkt. no. 562 at 9), the Court notes that Defendant has incurred five disciplinary incidents during his incarceration, including an assault, participation in a fight, disruptive conduct, refusal to take a drug or alcohol test, and inappropriate touching of a female visitor.  (Dkt. no. 554 at 13.)  Thus, the Court has no reason to believe that Defendant would not continue to endanger his community.  Accordingly, the Section 3553(a) factors counsel against release.

## IV. Conclusion

For the reasons set out above, Defendant's Second 2255 Petition and 3582 Motion, (dkt. nos. 542, 547), are denied.

The Clerk of the Court shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:   New York, New York
         November 15, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge